# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| ANGELA DEVERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-12-1285-D |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of the | ) | |
| Social Security Administration, [1] | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Angela Devers brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act, 42 U.S.C. §§ 401-434, 1381-1383f. United States District Judge Timothy D. DeGiusti has referred this matter to the undersigned magistrate judge for initial proceedings consistent with 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure. The Commissioner has answered and filed the administrative record (Doc. No. 12, hereinafter "R. __"). The parties have briefed their positions, and the case is now ready for decision. For the reasons stated herein, it is recommended that the Commissioner's decision be AFFIRMED.

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Acting Commissioner Colvin is substituted for the former Commissioner as the defendant in this suit.

PROCEDURAL HISTORY AND ADMINISTRATIVE DECISION

Plaintiff filed applications for DIB and SSI on December 3, 2008, with a protective filing date of November 18, 2008. R. 143, 146, 178. Plaintiff alleged a disability onset date of January 1, 2006 and sought benefits on the basis of: osteoporosis, equilibrium problems, thyroid problems, and shortness of breath. R. 143, 146, 183. Following denial of her applications initially and on reconsideration, Plaintiff requested and received a hearing before an Administrative Law Judge ("ALJ") on September 15, 2010. R. 28-55, 56, 57. In addition to Plaintiff, a vocational expert appeared and testified at the hearing. R. 17, 49-54. The ALJ issued an unfavorable decision on September 19, 2011. R. 14-27.

The Commissioner uses a five-step sequential evaluation process to determine entitlement to disability benefits. *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (summarizing steps); 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 1, 2006. R. 20. At step two, the ALJ determined that Plaintiff had the following severe impairments: a history of breast cancer and status post right knee arthroscopy. R. 20. At step three, the ALJ determined that Plaintiff's condition did not meet or equal any of the presumptively disabling impairments listed in 20 C.F.R. Pt. 404, Subpart P, Appendix 1 (the "Listings"). R. 22.

The ALJ next assessed Plaintiff's residual functional capacity ("RFC") based on all of her impairments. R. 23. The ALJ considered Plaintiff's testimony at the hearing and medical records concerning Plaintiff. R. 23-25. The ALJ found that Plaintiff had the RFC to perform sedentary work with some postural limitations:

The claimant can lift and/or carry and push and/or pull ten pounds. She can stand and/or walk for a total of two hours in a workday. She can sit, with normal breaks, for a total of six hours in a workday. The claimant can climb, balance, crouch, stoop, crawl, and kneel occasionally.

R. 23. Based on this RFC assessment, the ALJ determined at step four that Plaintiff was unable to perform her past relevant work of as a restaurant supervisor. R. 25.

At step five, the ALJ considered whether there are jobs existing in significant numbers in the national economy that Plaintiff – in view of her age, education, work experience, and RFC – could perform. R. 25-27. Taking into consideration Plaintiff's skills acquired in past work and the vocational expert's testimony, the ALJ concluded that Plaintiff could perform the sedentary, semiskilled occupation of a procurement clerk. R. 26. The ALJ further concluded that Plaintiff could perform the sedentary, unskilled occupations of table worker and food and beverage order clerk. All of these occupations offer jobs in significant numbers in the Oklahoma and national economies. R. 25. Therefore, the ALJ concluded that Plaintiff had not been disabled within the meaning of the Act during the relevant time period. R. 27.

Plaintiff's request for review by the Appeals Council was denied. R. 1. The September 19, 2011 determination of the ALJ thus became the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481. Thereafter, Plaintiff commenced this appeal.

## STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether factual findings are supported by substantial evidence in the record as a whole

and whether correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (internal quotation marks omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004) (internal quotation marks omitted). The court "meticulously examine[s] the record as a whole," including any evidence that may undercut or detract from the administrative law judge's findings, to determine if the substantiality test has been met. *Wall*, 561 F.3d at 1052 (internal quotation marks omitted). While the court considers whether the Commissioner followed applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

## ISSUES PRESENTED ON APPEAL

Plaintiff raises three claims of error on appeal. First, Plaintiff contends that the ALJ's RFC assessment is flawed because the RFC "does not square with the totality" of the medical evidence in the record and because the ALJ failed to properly articulate the weight she assigned to the treating and consulting physicians' medical opinions. Second, Plaintiff asserts that the ALJ "played doctor" and improperly "cherry-picked" the medical evidence in determining that Plaintiff's anxiety was not a severe impairment. Finally,

Plaintiff argues that the ALJ failed to properly assess Plaintiff's credibility. *See* Pl. Br., Doc. No. 14, at 4-14.

## ANALYSIS

## I.      Whether Plaintiff's RFC Is Supported by Substantial Evidence

Plaintiff contends that the ALJ's RFC assessment is "wrong" and, specifically, that the ALJ erred in finding that Plaintiff can stand or walk for a total of two hours in one work day and can occasionally climb, balance, crouch, stoop, crawl, and kneel. Pl. Br. at 4-10. To the extent Plaintiff asserts that the ALJ's conclusion "does not square" with the evidence, this is an argument that the ALJ's factual findings were not supported by substantial evidence in the record, and, thus, the undersigned reviews this substantiality claim under the standard outlined above. *See, e.g.*, *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007) ("Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." (internal quotation marks omitted)).

Plaintiff argues that the ALJ's RFC is contrary to the opinions of consulting physicians Sherman Lawton, M.D., and James Metcalf, M.D., as well as Plaintiff's own hearing testimony. Pl. Br. at 4-6. On January 8, 2009, Plaintiff obtained a comprehensive internal medicine examination from Dr. Metcalf in connection with her SSA applications. R. 368-76. Plaintiff also was examined by Dr. Lawton, a neurologist, on April 7, 2009, for purposes of Plaintiff's SSA applications. R. 379-81.

The ALJ specifically discussed these physicians' opinions in her decision, noting that Plaintiff exhibited "severe balance problems" when examined by Dr. Metcalf. R. 21-22, 24.

Dr. Metcalf indeed stated that Plaintiff was "very unsteady," had "rather extreme difficulty with her balance," and needed help getting on and off the exam table. R. 370-71. Together with these observations, however, Dr. Metcalf opined that Plaintiff's spine, hips, knees, and ankles had adequate muscle strength, normal sensory function, and normal range of motion and that Plaintiff ambulated at a normal pace, although with a jerking gait and holding onto the wall at times. R. 370-76.

Following Dr. Metcalf's examination, Dr. Lawton examined Plaintiff at the SSA's request. R. 379. Plaintiff states that Dr. Lawton noted that Plaintiff has no deep tendon reflexes and indicated that Plaintiff had standing, walking, and balance issues. Pl. Br. at 4. Plaintiff's characterization of Dr. Lawton's medical opinion is superficial at best, however. Dr. Lawton did not indicate that the lack of reflexes was significant, noting "a few normal people have no deep tendon reflexes." R. 381. More fundamentally, while Dr. Lawton noted Plaintiff's movement and balance issues, the thrust of his opinion is that these issues were likely caused or exacerbated by a lack of effort on Plaintiff's part:

> She clearly can walk without an assistive device. I think she has a bit of a limp related to the knee surgery. . . .
>
> In summary, although I cannot completely exclude the patient having a bit of ataxia on an organic basis, there is so much in the way of nonorganic response on other parts of the examination that I am going to have to assume that the apparent incoordination that the patient exhibits, which is effort dependent, is also an effort dependent problem. It is noted that the patient's handwriting is normal and she had no difficulty using her hands to zip her coat or to take her shoes off and on.
>
> Similarly, I can't entirely exclude the patient might not have a peripheral neuropathy related perhaps to chemotherapy, although the patient's reflexes may in fact be normal and we have the same problem with effort dependence. . . . In summary, I would state that there is no clear evidence of any organic pathology in this patient, although there is an outside chance that

such pathology could be disguised by nonorganic factors as noted above.

R. 381; *see also* R. at 380 (observing complete collapse of Plaintiff's leg muscles with fingertip pressure despite no evidence of atrophy). Consistent with Dr. Lawton's written opinion, the ALJ found: "The claimant did not give full effort with the consultative neurologist, and he found no organic basis for her condition." *See* R. 24.

Other evidence in the record supports the ALJ's determination that Plaintiff is able to stand and/or walk for a total of two hours in a workday; sit, with normal breaks, for a total of six hours in a workday; and climb, balance, crouch, stoop, crawl, and kneel occasionally. *See* R. 23-25. Plaintiff had surgery to repair her anterior cruciate ligament and meniscus in her right knee on September 8, 2006, but she was able to fully bear weight on that knee one month later, although she complained of some pain. R. 281-84, 603. While Plaintiff testified at the hearing that she often uses a walker at home and has falling spells, there is no evidence in the record that she received any treatment for knee issues for a year and a half after her surgery. R. 38-39. On July 11, 2008, Plaintiff had no tenderness and full range of motion in all extremities. R. 255.

Plaintiff specifically disagrees with the ALJ's determination that Plaintiff is able to balance, stoop, kneel, crouch, or crawl occasionally. *See* Pl. Br. at 5-6, 9-10. As outlined above, however, Plaintiff did not exhibit severe balance problems when she was examined by Dr. Lawton in April 2009. *See* R. 380-81. In addition, as defined by the *Dictionary of Occupational Titles* (4th ed. 1991) ("*DOT*"), relied upon by the vocational expert, the activities of climbing, balancing, stooping, kneeling, crouching, and crawling are "not present" in the three sedentary representative jobs that the ALJ identified for Plaintiff. *See*

*DOT* 249.367-066, 1991 WL 672335 (procurement clerk); *id.* 739.687-182, 1991 WL 680217 (table worker); *id.* 209.567-014, 1991 WL 671794 (food and beverage order clerk). Plaintiff's alleged inability to perform these particular activities therefore would not render Plaintiff unable to perform these representative jobs.

In the decision, the ALJ emphasized that she considered all of the evidence in the record in reaching her findings and conclusions. *See* R. 18, 20-21, 23-25. Plaintiff implies that the ALJ could not have reviewed the 600-plus pages of medical records and still have reached her conclusion as to Plaintiff's RFC. Pl. Br. at 8. Plaintiff does not point to any record or opinion that the ALJ erroneously omitted from consideration. In addition, neither the bulk nor the bulkiness of the record appreciably helps Plaintiff's cause. While it is true that there are over 600 pages of medical evidence in the record, there are many documents submitted in duplicate, triplicate, or even higher multiples by Plaintiff's counsel to the SSA. Further, the medical evidence includes documents that shed little or no light on Plaintiff's disability status, including records for billing, admittance, and emergency room visits unrelated to Plaintiff's alleged basis for disability payments. *See* R. 239-844.

In a separate section of her brief concerning the ALJ's step-two findings, Plaintiff includes the isolated statement: "Worse yet, the ALJ's RFC didn't even include all the impairments." Pl. Br. at 12. To obtain judicial review, it is insufficient to simply "suggest dissatisfaction" or merely mention an issue in the context of another matter. *See Murrell v. Shalala*, 43 F.3d 1388, 1389 n.2 (10th Cir. 1994). With this naked allegation, Plaintiff fails to develop any legal or factual basis for reversal, and the undersigned will

not speculate or develop appellate arguments on her behalf.  *See id.*; *Threet v. Barnhart*, 353 F.3d 1185, 1190 (10th Cir. 2003).

Having considered the relevant evidence, including the consulting physicians' opinions, the ALJ reasonably determined that Plaintiff could perform sedentary work subject to certain postural limitations.  Upon careful examination, the undersigned concludes that the ALJ's RFC assessment is supported by substantial evidence, and reversal is not warranted on this basis.

## II.  Whether the ALJ Properly Considered Examining Physicians' Opinions

### A.  The Treating Physician Rule

SSA regulations distinguish among various types of "acceptable medical sources." *See* 20 C.F.R. §§ 404.1502, -.1513(a); *id.* §§ 416.902, -.913(a).  Generally, the highest weight is given to the opinion of a "treating source," which includes a physician or psychologist who has "provided [the claimant] with medical treatment or evaluation" during a current or past "ongoing treatment relationship" with the claimant.  *Id.* §§ 404.1502, -.1527(c), 416.902, .927(c); *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004).  The opinion of a "nontreating source" – which includes a physician or psychologist who has examined the claimant, but does not have a current or past "ongoing treatment relationship" with the claimant – must be considered but generally is not given as much weight as that of a treating source.  20 C.F.R. §§ 404.1502, -.1527, 416.902, -.927.  "Regardless of its source, [the ALJ] will evaluate every medical opinion" received into the record by the SSA.  *Id.* §§ 404.1527(c), 416.927(c).

When considering the opinion of a claimant's treating physician, pursuant to the "treating physician rule" the ALJ must first determine whether the opinion should be given "controlling weight" on the matter to which it relates. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The opinion of a treating physician must be given controlling weight if it is *both* well supported by medically acceptable clinical or laboratory diagnostic techniques *and* not inconsistent with other substantial evidence in the record. *Watkins*, 350 F.3d at 1300 (applying SSR 96–2p, 1996 WL 374188, at *2 (July 2, 1996)); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The Tenth Circuit long has recognized that "[a]n ALJ must give good reasons in the notice of determination or decision for the weight assigned to a treating physician's opinion." *Watkins*, 350 F.3d at 1300 (alteration and internal quotation marks omitted). That an opinion is not given controlling weight does not resolve the second, distinct assessment—i.e., what lesser weight should be afforded the opinion and why. *See id.* at 1300-01. The ALJ is obligated to clearly state what weight *is* being given to the opinion and his or her reasoning therefor. *Id.* at 1301. In this second inquiry, the ALJ weighs the relevant medical opinion using a prescribed set of regulatory factors. *Id.*; *see also* 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).

Finally, if an ALJ rejects a treating source opinion altogether, he or she "must then give specific, legitimate reasons for doing so." *Watkins*, 350 F.3d at 1301 (internal quotation marks omitted). For a nontreating source, the ALJ is required "to consider" the opinion evidence and, if the ALJ rejects it, "to provide specific legitimate reasons for

rejecting it." *Doyal*, 331 F.3d at 764; *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); SSR 96–5p, 1996 WL 374183 (July 2, 1996).

### B. Analysis

Plaintiff finds fault in the RFC assessment because "the ALJ completely failed to discuss what weight, if any, she gave to the treating or consultative physicians."  Pl. Br. at 6.  Plaintiff's numerous references to the allegedly erroneous analysis of the opinions of her "treating physicians" are misleading.  Plaintiff identifies no treating physician opinion that the ALJ improperly weighed or rejected.  *See* Pl. Br. at 4-10.  While this alone would be sufficient grounds to deny the alleged point of error, *see Threet*, 353 F.3d at 1190 ("[Claimant] does not identify which treating physician she feels was ignored, and we will not speculate on her behalf."), the undersigned has examined the record in an attempt to deduce the focus of Plaintiff's argument.

As outlined above, the majority of Plaintiff's medical evidence is documentation from emergency room visits.  These records do not reflect "ongoing treatment relationship[s]" between Plaintiff and the physicians named therein sufficient to render those physicians "treating sources" under the regulations.  *See* 20 C.F.R. §§ 404.1502, 416.902.  The only physician who even potentially could be considered a "treating" physician is John Hughes, D.O., who performed a surgical repair of Plaintiff's right knee in September 2006 that was discussed expressly by the ALJ.  *See* R. 21, 280-87, 415-60. The undersigned's review of the record does not find, however, that Plaintiff continued to be treated by Dr. Hughes following the surgery or that Dr. Hughes has issued any post-surgery opinions relevant to "the nature and extent" of Plaintiff's post-surgery physical

and mental limitations or Plaintiff's "residual functional capacity for work activity on a regular and continuing basis." *See* 20 C.F.R. §§ 404.1545, 416.945. Accordingly, Plaintiff's argument that the ALJ failed to follow the treating physician rule is unavailing.

Regarding the "consultative physicians," Plaintiff argues that the ALJ erred by: (1) failing to explicitly discuss the weight assigned to the opinions of Dr. Lawton and Dr. Metcalf; and (2) giving any weight at all to the opinions of two state agency physicians who completed a physical RFC assessment of Plaintiff. Pl. Br. at 6-8. With respect to the first point of error, the parties do not dispute that Plaintiff's relationship with these two doctors was based "solely on [her] need to obtain a report in support of [her] claim for disability." *See* 20 C.F.R. §§ 404.1502, 416.902. Dr. Lawton and Dr. Medford therefore are "nontreating sources" pursuant to the SSA regulations.

> Nontreating source means a physician, psychologist, or other acceptable medical source who has examined you but does not have, or did not have, an ongoing treatment relationship with you. The term includes an acceptable medical source who is a consultative examiner for us, when the consultative examiner is not your treating source.

*See* 20 C.F.R. §§ 404.1502, 416.902.

Plaintiff argues that the ALJ erred because she did not consider the six regulatory factors prescribed in *Watkins* and 20 C.F.R. §§ 404.1527 and 416.927. Pl. Br. at 7. Plaintiff's premise is flawed, however, because the ALJ must undertake that analysis and address those factors with respect to *treating source* medical opinions. *See Watkins*, 350 F.3d at 1300-01; 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). Plaintiff cites no corresponding "nontreating source" rule and provides no authority for the proposition that the ALJ's failure to expressly assign a weight and apply these factors to a

consultative, nontreating physician's opinion amounts to reversible error. Rather, as explained above, the opinion of a nontreating source must be considered and, to the extent the ALJ rejects it, the ALJ must give "specific legitimate reasons" for doing so. *Doyal*, 331 F.3d at 764. Here, the ALJ analyzed and discussed the two consulting physicians' opinions in detail. *See* R. 21-22, 24; 20 C.F.R. §§ 404.1502, -.1527(c), 416.902, -.927(c). The ALJ also specifically stated that she considered all medical opinions in accordance with applicable regulations and "considered the nature and length of the treating relationship, areas of specialty, findings supporting the opinions, and similar factors." R. 24. Other than the alleged lack of evidence supporting the RFC determination, Plaintiff points to no specific harm or prejudice arising from the ALJ's weighing of the consulting physicians' opinions. Plaintiff has not shown reversible legal error in the ALJ's treatment of the consultative physicians' opinions.

Next, Plaintiff alleges that state agency physicians "did nothing" but read "real physicians['] reports," and were "unreliable," such that the ALJ erred to the extent her RFC assessment reflects agreement with their opinions. Pl. Br. at 7-8; *see also* 20 C.F.R. §§ 404.1527(e), 416.927(e). Regarding the state agency physicians, Luther Woodcock, M.D., reviewed the evidence in Plaintiff's file and completed a physical residual functional capacity assessment in April 2009. R. 382-89. Dr. Woodcock's assessment was affirmed by Janet Rodgers, M.D. in July 2009. R. 390-92.

To the extent Plaintiff argues that the ALJ relied too heavily on these "suspect" opinions, she does not show any error on the ALJ's part. These state nonexamining sources found that Plaintiff could sit for about six hours per workday, with no postural

limitations; the ALJ's RFC assessment actually was more favorable to Plaintiff, finding that Plaintiff was subject to multiple postural limitations based on evidence received at the hearing. *See* R. 23-24, 384-85. Plaintiff also cites *McGoffin v. Barnhart*, 288 F.3d 1248 (10th Cir. 2002), for the proposition that the state physicians' opinions are of "suspect reliability." *See* Pl. Br. at 7. The Tenth Circuit's statement to that effect in *McGoffin*, however, was made under very different circumstances than those found here. In that case, the ALJ had relied upon a nonexamining physician opinion to make the "critical finding" that the claimant's substance dependence was a contributing factor material to her disability determination. *See McGoffin*, 288 F.3d at 1253. Here, the ALJ expressly declined to give full weight to the nonexamining physicians' opinions and based her RFC upon numerous items of evidence in the record. *See* R. 23-25.

To the extent Plaintiff argues the ALJ did not adequately articulate the weight assigned to the state physicians' opinions, Plaintiff has not shown that some version of the treating physician rule is implicated here. With respect to these nontreating, nonexamining physicians' opinions, the ALJ gave them "some weight" and explained why. R. 24. No more was required. *See* 20 C.F.R. §§ 404.1527(e), 416.927(e).

The undersigned concludes that there was no reversible legal error in the ALJ's treatment of the medical opinion evidence in this case.

## III.    Whether the ALJ Erred in Determining That Plaintiff's Anxiety Was Not a "Severe" Impairment

Plaintiff argues that the ALJ "played doctor," "making up her own evidence" and disregarding the law, to "cherry-pick her way to a negative result" for Plaintiff, including

the ALJ's finding that Plaintiff's anxiety was not a severe impairment.  *See* Pl. Br. at 10-12.  This is at its core an argument that the ALJ's finding is not supported by substantial evidence in the record.  *See Flaherty*, 515 F.3d at 1071.  To establish the existence of a severe impairment at step two, Plaintiff "must show more than the mere presence of a condition or ailment."  *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997).  Rather, the claimed "impairment must be of a nature and degree of severity sufficient to justify its consideration as the *cause of failure to obtain any substantial gainful work*."  *Williamson v. Barnhart*, 350 F.3d 1097, 1100 (10th Cir. 2003) (internal quotation marks omitted).  To qualify as severe, an impairment must "significantly limit [Plaintiff's] physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1521(a), 416.921(a).

Plaintiff did not seek SSI or DIB on the basis of her anxiety impairment.  *See* R. 143, 146, 183.  Plaintiff did not obtain treatment for anxiety during the relevant time period for her applications.  *See*  R. 22, 819, 843.  During the hearing, Plaintiff testified that she did not have mental health issues.  R. 46.  The ALJ nonetheless evaluated Plaintiff's anxiety – including her treatment history, her anxiety's effect on activities, and the state agency consulting psychologists' mental assessment – in forming her RFC and the disability determination.  *See* R. 22, 24-25.  The ALJ found at step two of the sequential evaluation that Plaintiff's anxiety was "nonsevere," "because the impairment is a slight abnormality that has no more than a minimal effect, if any, on the claimant's ability to perform basic work activities."  R. 22 (citing SSR 96-3p, 1996 WL 374181 (July 2, 1996)).

The ALJ specifically addressed the state psychologists' opinions but gave them little weight because Plaintiffs' records show "her anxiety does not limit her activities, social functioning, or concentration, persistence, or pace." R. 24-25. The ALJ also noted, "The fact that the claimant did not even allege mental issues for the current applications indicates that she no longer considers the previously alleged mental impairments an issue." R. 25. According to Plaintiff, the ALJ erred because (1) the state psychologists said Plaintiff had "the severe impairment of anxiety," and (2) "the evidence reflects that anxiety is mentioned 8 times." Pl. Br. at 11.

As to the first point, the state consulting psychologists' opinions, even if adopted wholesale rather than picked over as alleged, constitute substantial evidence supporting the ALJ's finding that Plaintiff's anxiety is not severe for purposes of her SSA applications. In April 2008, consulting psychologist Janet Kates, Ph.D., provided a diagnosis of anxiety disorder but noted that Plaintiff's anxiety episodes appeared to be improved since her previous evaluation (in January 2003 for a prior benefits application). R. 822-26. Dr. Kates also opined that Plaintiff's memory problems "do not significantly interfere with her daily abilities." R. 826. In May 2008, Ron Smallwood, Ph.D., completed a mental residual functional capacity assessment and concluded that while Plaintiff cannot relate to the general public, Plaintiff can: "perform simple tasks with routine supervision"; "relate to supervisors and peers on a superficial work basis"; and "adapt to a work situation." R. 829. These opinions in and of themselves are substantial evidence underlying the ALJ's determination that Plaintiff's anxiety was nonsevere,

having at most a minimal effect on her ability to perform work activities. *See* R. at 22; SSR 96-3p, 1996 WL 374181.

As to the second point, Plaintiff does not provide the referenced eight citations. In any event, upon consideration of the entirety of the record, as discussed above, there is substantial evidence to support the ALJ's finding—notwithstanding any contrary "mentions" of anxiety. *See Murrell*, 43 F.3d at 1389 n.2; *Threet*, 353 F.3d at 1190.

## IV.    Whether the ALJ Erred in Assessing Plaintiff's Credibility

The assessment of a claimant's RFC at step four generally requires the ALJ to "make a finding about the credibility of the [claimant's] statements about the symptom(s) and its functional effects." SSR 96-7p, 1996 WL 347186, at *1 (July 2, 1996). Plaintiff contends that the ALJ erred by failing to closely and affirmatively link his credibility findings regarding Plaintiff's allegations of "the intensity, persistence, and functionally limiting effects of the symptoms" associated with her medically determinable impairments to substantial evidence in the record. Pl.'s Br. at 14 (quoting SSR 96-7p, 1996 WL 374186, at *1). This argument implicates the framework for the proper analysis of a claimant's evidence of pain and other subjective symptoms first set forth in *Luna v. Bowen*, 834 F.2d 161, 163-66 (10th Cir. 1987), and recently summarized in *Wilson v. Astrue*, 602 F.3d 1136, 1144-45 (10th Cir. 2010). *See* R. 23.

The ALJ determined that Plaintiff's medically determinable impairments "reasonably could be expected to cause *some* of the alleged symptoms." R. 24 (emphasis added); *see also* R. 143, 146, 183 (Plaintiff sought benefits on the basis of: osteoporosis, equilibrium problems, thyroid, and shortness of breath). The ALJ specifically concluded

that Plaintiff's statements regarding "the intensity, persistence, and limiting effects of these symptoms" were not credible to the extent they were inconsistent with the RFC assessment. R. 24. Regarding Plaintiff's physical impairments, the ALJ noted that because Plaintiff cares for four foster children, cleans, and cooks, "her activities suggest she remains less limited than alleged." R. 24; *see also* R. 35 (hearing testimony). The ALJ also noted that Plaintiff "did not give full effort" with consulting neurologist Dr. Lawton (as described *supra*) and that Dr. Lawton did not note the severe balance problems exhibited with consulting physician Dr. Metcalf. R. 24. Further, the ALJ took note of the fact that Plaintiff has obtained only limited care for her allegedly disabling problems and rarely has taken medication since her alleged onset date, other than for acute, short-term problems. R. 24. The ALJ noted that at the time of the accident, in 2006, Plaintiff told emergency room personnel she had injured her knee while running in her house, but in 2009 she told Dr. Lawton that she had injured her knee falling in the bathtub. R. 21-22; *see also* R. 380, 418.

Viewed in the context of the entire decision, the ALJ's view toward the credibility of Plaintiff's subjective complaints is not purely conclusory and is sufficiently "linked to substantial evidence." *See Wilson*, 602 F.3d at 1144-45. Plaintiff does not allege that the ALJ misstated any of the above evidence, and the decision clearly demonstrates that ALJ considered the prescribed factors in assessing Plaintiff's credibility—e.g., "daily activities"; treatment received; and "location, duration, frequency, and intensity of the individual's pain or other symptoms." *See* R. 21-25; SSR 96-7p, 1996 WL 374186, at *3. A claimant's ability to care for young children and engage in daily activities, her failure

to obtain medical treatment, or her contradictory statements to medical personnel all may support an adverse credibility assessment. *See Rabon v. Astrue*, 464 F. App'x 732, 735 (10th Cir. 2012); *Holcomb v. Astrue*, 389 F. App'x 757, 761 (10th Cir. 2010). The Court should not "engage in an impermissible reweighing of the evidence" or "substitute [its] judgment for that of the Commissioner." *See Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005).

As outlined above, the ALJ considers credibility in the course of assessing the RFC; the ALJ may not rely on the RFC to then conclude that a claimant is less than fully credible. *See* SSR 96-7p, 1996 WL 374186. Plaintiff additionally contends that the ALJ erred in her credibility analysis in just this latter manner, however, by improperly formulating Plaintiff's RFC prior to evaluating the hearing testimony and the other evidence in the record. *See* Pl. Br. at 13. Plaintiff relies upon the ALJ's statement – appearing in the decision's credibility determination, which in turn appears in the RFC assessment – that Plaintiff's statements concerning certain aspects of her symptoms "are not credible to the extent they are inconsistent with the above residual functional capacity assessment." Pl. Br. at 12-14; R. 24.

The suggested error commonly is referred to as a "*Bjornson* error,"—i.e., that the ALJ's use of boilerplate language indicates that the ALJ improperly relied upon the already formulated RFC in determining the claimant's credibility. *See Bjornson v. Astrue*, 671 F.3d 640, 644-45 (7th Cir. 2012). Here, however, no such error has been shown. As with the other portions of the analysis in the decision, the ALJ set out her conclusion in bold type, and the analysis she had undertaken to reach that conclusion

follows in plain type. *See* R. 23-25. The fact that the ALJ's discussion of credibility technically appears after the RFC in the written decision does not, by itself, mean that the ALJ's conclusion preceded, as a matter of sequential reasoning, her underlying analysis. *See Jimison ex rel. Sims v. Colvin*, 513 F. App'x 789, 796 (10th Cir. 2013) (rejecting claimant's challenge to substantially identical language). The ALJ's use of this boilerplate language would be insufficient to sustain the credibility findings "only in the absence of a more thorough analysis." *See id.* (internal quotation marks omitted). As explained above, however, the ALJ did surround this boilerplate statement with a thorough analysis, citing specific items of evidence and discussing how this evidence undermined Plaintiff's credibility regarding her limitations. *See* R. 21-22, 23-25. Reversal is not warranted on this point.

## RECOMMENDATION

Having reviewed the record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned magistrate judge recommends that the decision of the Commissioner be affirmed.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file written objections to this Report and Recommendation in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. Any such objections must be filed with the Clerk of this Court by March 25, 2014. The parties further are advised that failure to timely object to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in this case.

ENTERED this 11th day of March, 2014.

_____
CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE